# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John W. Darrah | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 2546 | **DATE** | 12/12/2001 |
| **CASE TITLE** | GORDON DINWIDDIE vs. JAMES CHRANS | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
  ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Status hearing held. Gordon Dinwiddie's Petition for Writ of Habeas Corpus is denied.
(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | **Document Number** |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | | |
| | Notified counsel by telephone. | DEC 13 2001 date docketed | |
| ✓ | Docketing to mail notices. | | 31 |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| | | 01 DEC 12 PM 5:39 | date mailed notice |
| LG | courtroom deputy's initials | | |
| | | Date/time received in central Clerk's Office | mailing deputy initials |



DOCKETED DEC 13 2001

UNITED STATES OF AMERICA,   )
ex rel. GORDON DINWIDDIE,   )
                               )
          Petitioner,           )           Case No. 00 C 2546
                               )
                 v.                   )           The Honorable John W. Darrah
                               )
JAMES CHRANS,               )
                               )
          Respondent.        )
                               )

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Gordon Dinwiddie's ("Dinwiddie" or "Petitioner") Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 against Ron Matrisciano[1], Warden of the Joliet Correctional Center. For the following reasons, Dinwiddie's Petition [1] is DENIED.

## BACKGROUND

The following facts are taken from *People v. Dinwiddie*, 715 N.E.2d 640 (Ill. App. Ct. 1998).

On October 31, 1993, fourteen-year-old Shawn Carey was shot in the back and killed in Robichaux Park. *Dinwiddie*, 715 N.E.2d at 642. The bullet removed from his body came from a nine millimeter pistol. *Dinwiddie*, 715 N.E.2d at 642. An off-duty officer walking toward Robichaux Park heard gunfire and a car speeding away. *Dinwiddie*, 715 N.E.2d at 642. He saw a brown Riviera

---

[1] Ron Matrisciano has replaced James Chrans as Warden of the Joliet Correctional Center. In accordance with Federal Rule of Civil Procedure 25(d)(1), Ron Matrisciano is automatically substituted for James Chrans as the named Respondent.

-1-

31

and a blue Monte Carlo speeding away from the scene. *Dinwiddie*, 715 N.E.2d at 642. On November 1, 1993, police officers saw a blue Monte Carlo traveling at a high rate of speed. *Dinwiddie*, 715 N.E.2d at 642. The car "[made] a sharp turn and then stop[ped] in a vacant lot." *Dinwiddie*, 715 N.E.2d at 642. Three males, including sixteen-year-old Gordon Dinwiddie, got out of the car and ran. *Dinwiddie*, 715 N.E.2d at 642. Dinwiddie was caught and arrested. *Dinwiddie*, 715 N.E.2d at 642. Dinwiddie was released to his father's custody. *Dinwiddie*, 715 N.E.2d at 642.

On November 2, 1993, Dinwiddie was home alone with his stepfather. *Dinwiddie*, 715 N.E.2d at 642. At 6:30 p.m., his stepfather, Grantlen, answered the door and let in two police officers. *Dinwiddie*, 715 N.E.2d at 642. Grantlen called Dinwiddie. *Dinwiddie*, 715 N.E.2d at 642. One of the officers told Dinwiddie that he was a suspect in a murder investigation and advised him of his *Miranda* rights. *Dinwiddie*, 715 N.E.2d at 642. Dinwiddie asked to speak to the officers outside the presence of his stepfather, whereupon, they went to the basement. *Dinwiddie*, 715 N.E.2d at 642.

In the basement, Dinwiddie admitted driving a car used in the shooting and that James Cockerham was a passenger. *Dinwiddie*, 715 N.E.2d at 642. He also admitted shooting at a gang with a nine millimeter pistol provided by Cockerham. *Dinwiddie*, 715 N.E.2d at 642-43. The officers then arrested Dinwiddie. *Dinwiddie*, 715 N.E.2d at 643. Dinwiddie directed the officers to Cockerham's house where Cockerham was arrested. *Dinwiddie*, 715 N.E.2d at 643. At Cockerham's home, the police recovered a .380 semi-automatic weapon and boxes of ammunition. *Dinwiddie*, 715 N.E.2d at 643.

Later that day, at 7:30 p.m., Dinwiddie was taken to the police station, where no youth officer was present. *Dinwiddie*, 715 N.E.2d at 643. There, he was interviewed by a detective after again

being advised of his *Miranda* rights. *Dinwiddie*, 715 N.E.2d at 643. Dinwiddie waived his rights and again confessed to the shooting. *Dinwiddie*, 715 N.E.2d at 643. At 11:20 p.m. on November 2, 1993, an Assistant State's Attorney arrived at the police station. *Dinwiddie*, 715 N.E.2d at 643. She identified herself and advised Dinwiddie of his *Miranda* rights. *Dinwiddie*, 715 N.E.2d at 643. A youth officer and the detective who questioned Dinwiddie were also present. *Dinwiddie*, 715 N.E.2d at 643. Dinwiddie confessed to the shooting again and prepared a handwritten statement, which he signed. *Dinwiddie*, 715 N.E.2d at 643. While alone with the State's Attorney, Dinwiddie informed her that the officers had not threatened or mistreated him. *Dinwiddie*, 715 N.E.2d at 643.

At a hearing on Dinwiddie's motion to suppress the confessions, Grantlen testified that he was upstairs while the police spoke with Dinwiddie in the basement for fifteen to twenty minutes. *Dinwiddie*, 715 N.E.2d at 644. Grantlen also testified that he did not hear any screaming, banging or voices when Dinwiddie was in the basement with the police officers. *Dinwiddie*, 715 N.E.2d at 644.

During the trial, the detective who interviewed Dinwiddie at the station testified that Dinwiddie said that Cockerham had a nine millimeter pistol and a .380 semi-automatic weapon with him while they drove around in the stolen Riviera. *Dinwiddie*, 715 N.E.2d at 645. During rebuttal closing arguments, the prosecutor "repeatedly asked for evidence to corroborate defendant's alibi in addition to the testimony of [Dinwiddie's] relatives." *Dinwiddie*, 715 N.E.2d at 646.

Following a jury trial, Gordon Dinwiddie was convicted of first-degree murder and sentenced to sixty years in prison, which is the maximum sentence for first-degree murder in the Circuit Court of Cook County. *Dinwiddie*, 715 N.E.2d at 643. "At sentencing, Darnell Mitchell tesitified that in May of 1993, [Dinwiddie] shot him twice in the back, after a prior altercation. The court also heard

evidence that [Dinwiddie] stole a car in September of 1993." *Dinwiddie*, 715 N.E.2d at 647.

Petitioner appealed, raising the following four issues: (1) whether Petitioner's statement was voluntary where, as a juvenile, he was denied the opportunity to see his mother or a juvenile officer before making his statement; (2) whether he was denied a fair trial where the trial court allowed testimony of a weapon that was not connected to the crime; (3) whether he was proven guilty of first degree murder beyond a reasonable doubt; (4) whether he was deprived of a fair trial by the prosecutor's closing argument; and (5) whether, based on his age, Petitioner's sentence of sixty years for first degree murder is excessive. On September 30, 1998, the Illinois Appellate Court rejected Petitioner's claim and affirmed his conviction and sentence. Dinwiddie then filed a Petition for Rehearing that was denied on November 2, 1998.

Dinwiddie filed a Petition for Leave to Appeal with the Illinois Supreme Court, raising a single issue: whether his statement was voluntary where Dinwiddie was denied an opportunity to confer with his mother or a juvenile officer prior to making a statement. On March 31, 1999, the Illinois Supreme Court denied Dinwiddie's Petition for Leave to Appeal.

On April 25, 2000, Dinwiddie filed this Petition for Writ of Habeas Corpus with this Court. Petitioner raised five grounds for relief: (1) Petitioner was denied due process, equal protection and effective assistance of counsel when the trial court determined that Petitioner's statements were voluntary and admissible; (2) Petitioner was denied a fair trial where the trial court allowed testimony of a weapon that was not connected to the crime which denied Petitioner of his rights to due process and equal protection; (3) Petitioner was denied due process and equal protection because he was not proven guilty beyond a reasonable doubt; (4) Petitioner was denied due process and equal protection when he was denied a fair trial by the prosecutor's closing argument; and (5) Petitioner

was denied due process and equal protection when he received an excessive sentence of sixty years.

On January 16, 2001, counsel was appointed to represent Petitioner. Petitioner's Brief in Support of Petition for a Writ of Habeas Corpus raised additional grounds for relief on his claim of ineffective assistance of counsel: (1) Petitioner's trial attorney incorrectly told Petitioner that he had to testify at trial, (2) Petitioner's trial attorney failed to conduct any meaningful investigation, (3) Petitioner's trial attorney failed to pursue an independent psychological analysis of Petitioner, and (4) Petitioner's trial attorney should not have acted as sole counsel for Petitioner.

## **LEGAL STANDARD**

A federal court will not grant habeas corpus relief on any claim adjudicated on the merits by a state court unless: (1) the state court applied a United States Supreme Court doctrine unreasonably to the facts of the case or (2) the state court's decision relied on an unreasonable reading of the facts in light of the evidence presented. 28 U.S.C. § 2254(d) (2001). For relief based on an unreasonable application of Supreme Court doctrine, the state court's decision must be both incorrect and unreasonable. *Washington v. Smith*, 219 F.3d 620, 628 (7th Cir. 2000).

Dinwiddie must satisfy two requirements to avoid procedural default before a court may reach the merits of his habeas corpus petition: (1) exhaustion of state remedies and (2) fair presentment of any federal claims. *Spreitzer v. Schomig*, 219 F.3d 639, 644 (7th Cir. 2000)(citations omitted). A habeas corpus petitioner exhausts all state remedies when (1) he presents his claims to the highest court for a ruling on the merits or (2) state remedies are no longer available to the petitioner at the time his federal habeas petition is filed. *Farrell v. Lane*, 939 F.2d 409, 410 (7th Cir. 1991)(citations omitted). "For a constitutional claim to be fairly presented to a state court, both the operative facts and the 'controlling legal principles' must be submitted." *Rodriguez v. Scillia*, 193

F.3d 913, 916 (7th Cir. 1999). "If a prisoner fails to present his claims in a petition for discretionary review to a state court of last resort, those claims are procedurally defaulted. *Rodriguez*, 193 F.3d at 917 (citing *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999)).

## ANALYSIS

As noted above, Petitioner did not raise the following claims in his Petition for Leave to Appeal to the Illinois Supreme Court: (1) that he was denied a fair trial where the trial court allowed testimony of a weapon that was not connected to the crime, (2) that he was denied due process and equal protection because he was not proven guilty beyond a reasonable doubt, (3) that he was denied due process and equal protection when he was denied a fair trial by the prosecutor's closing argument, (4) that he was denied due process and equal protection when he received an excessive sentence of sixty years, and (5) that his trial counsel was ineffective.

Petitioner's failure to present these claims to the Illinois Supreme Court has resulted in a procedural default of these claims. *O'Sullivan*, 526 U.S. at 848. Once procedural default has been established, the petitioner may still present those claims in federal court if he can demonstrate (1) cause for his default and (2) actual prejudice as a result of the alleged violations of federal law. *Steward v. Gilmore*, 80 F.3d 1205, 1211-12 (7th Cir. 1996). Petitioner can show cause "by showing that 'some objective factor external to the defense impeded [his] efforts to comply with the State's procedural rule.'" *United States ex rel. Taylor v. Barnett*, 109 F. Supp. 2d 911, 920 (N.D. Ill. 2000) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)).

Alternatively, the petitioner can present his claims if he can show that failure to consider the claim will result in a "fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Under *Schlup v. Delo*, 513 U.S. 298, 315, 327 (1995), a fundamental miscarriage of

justice has occurred when the petitioner can show that a "constitutional violation has probably resulted in the conviction of one who is actually innocent." The petitioner must show that "it is more likely than not that no reasonable juror would have convicted him in light of . . . new evidence." *Schlup*, 513 U.S. at 327. "Accordingly, without new evidence of innocence, even a meritorious constitutional claim is not sufficient to allow a habeas court to reach the merits of a procedurally defaulted claim." *United States ex rel. Bell v. Pierson*, 267 F.3d 544, 551 (7th Cir. 2001) (citing *Schlup*, 513 U.S. at 316).

Petitioner has not demonstrated any objective factor external to the defense that impeded his efforts to present the defaulted grounds for relief to the Illinois Supreme Court. Moreover, Petitioner has not presented any new evidence that would suggest that he is innocent. Therefore, Petitioner has not made a showing sufficient to survive a procedural default.

However, even if Petitioner had demonstrated cause and actual prejudice or that a fundamental miscarriage of justice would occur if his claims were not considered, Petitioner would not be entitled to relief on the defaulted grounds.

Petitioner was not denied a fair trial where the trial court allowed testimony of a weapon that was not related to the crime. In reviewing a "petitioner's submission concerning a state court's evidentiary ruling based on a state rule of evidence, [the district court will] . . . not consider the correctness of [a state] court's determination based on the state's evidentiary laws." *Koo v. McBride*, 124 F.3d 869, 874 (7th Cir. 1997) (citations omitted). Petitioner must show that he was deprived of a constitutional right by the trial court's ruling. *Koo*, 124 F.3d at 874.

> [W]hen the state merely fails to limit the prosecution's evidence [rather than when the state keeps out favorable evidence or prevents a defendant from cross-examining its witnesses], the only constitutional evidence the defendant can appeal is a catch-all

-7-

> sense of due process. . . . If the evidence is probative, it will be very difficult to find a ground for requiring as a matter of constitutional law that it be excluded; and if it is not probative, it will be hard to show how the defendant was hurt by the admission.

*Watkins v. Meloy*, 95 F.3d 4, 6 (7th Cir. 1996) (internal citations omitted). Here, the .380 semi-automatic weapon was found in James Cockerham's home. *Dinwiddie*, 715 N.E.2d at 645. In his statement to the police, Petitioner said that Cockerham had the .380 semi-automatic while he and Cockerham were driving around together at the time of the shooting. *Dinwiddie*, 715 N.E.2d at 645. The weapon was probative because it corroborated Petitioner's statement to the police. *Dinwiddie*, 715 N.E.2d at 646. Petitioner has not presented any evidence that would show that the Illinois Appellate Court unreasonably applied a Supreme Court doctrine or relied on an unreasonable reading of the facts of in light of the evidence presented. 28 U.S.C. § 2254(d). Therefore, habeas corpus relief would be inappropriate on this ground.

Petitioner is not entitled to habeas corpus on his second claim that he was not proven guilty beyond a reasonable doubt. The Due Process Clause of the Fourteenth Amendment protects a criminal defendant against conviction "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). This means that the district court must "determine whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318 (1979). The proper inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson*, 443 U.S. at 319.

Here, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Petitioner confessed that he shot the victim with a nine millimeter bullet. *People*

*v. Dinwiddie*, 299 Ill. App. 3d 636, 715 N.E.2d 640, 646 (Ill. App. Ct. 1998). As discussed in further detail below, Petitioner's confession was knowing and voluntary. "Evidence presented at trial indicated that the victim was shot with a 9 millimeter bullet." *Dinwiddie*, 715 N.E.2d at 646. Petitioner admitted that he was driving that car at the time of the shooting. *Dinwiddie*, 715 N.E.2d at 646. A day after the shooting, Petitioner was observed driving a car that was recovered by the police and determined to have been used in the shooting. *Dinwiddie*, 715 N.E.2d at 646. Based on this evidence, any reasonable trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Habeas corpus relief would not be appropriate because the state court did not unreasonably apply the *Jackson* doctrine to the facts of the case or rely on an unreasonable reading of the facts in light of the evidence presented. 28 U.S.C. § 2254(d).

Petitioner was not denied a fair trial by the prosecutor's closing argument. In reviewing improper comments by a prosecutor, the court will (1) determine whether the comments were improper and (2) whether the comments deprived the defendant of a fair trial. *United States v. Scott*, 267 F.3d 729, 740 (7th Cir. 2001). In determining whether the prosecutor's closing argument denied Petitioner a fair trial, the court will consider the following factors: (1) the nature and gravity of the misconduct, (2) whether the defense invited the response, (3) whether the trial court's instructions ameliorated any prejudice, (4) the weight of the evidence against the defendant, and (5) the defendant's opportunity to rebut. *Scott*, 267 F.3d at 740 (citations omitted).

The most important of these factors is the weight of the evidence. *Howard v. Gramley*, 225 F.3d 784, 793 (7th Cir. 2000). Here, the most damning evidence came from Petitioner himself, who confessed to the crime on three separate occasions. Additionally, other evidence corroborated Petitioner's confession: (1) witnesses observed Petitioner, a day after the shooting, driving around

in a car used in the shooting; (2) the bullets found in the victim matched the gun that Petitioner confessed to using; and (3) the gun found at Cockerham's house matched the weapon identified in the confession. Habeas corpus relief is not appropriate on this claim because the state court did not apply a United States Supreme Court doctrine unreasonably to the facts of the case and the state court's decision did not rely on an unreasonable reading of the facts in light of the evidence presented. 28 U.S.C. § 2254(d).

Petitioner was not denied due process and equal protection when he received a sentence of sixty years. "[A] federal court will not normally review a state sentencing determination which . . . falls within the statutory limit." *Gleason v. Welborn*, 42 F.3d 1107, 1112 (7th Cir. 1994), *cert. denied*, 514 U.S. 1109 (1995). Sentences are reviewed if a petitioner can show the sentencing court lacked jurisdiction to impose the sentence or committed a constitutional error, i.e. the sentence is extreme and grossly disproportionate to the crime. *Koo*, 124 F.3d at 875 (citations omitted). The court will consider three factors in determining whether a sentence is grossly disproportionate to the crime: "'(1) the inherent gravity of the offense, (2) the sentences imposed for similarly grave offenses in the same jurisdiction, and (3) sentences imposed for the same crime in other jurisdictions.'" *Koo*, 124 F.3d at 875-76 (quoting *Harmelin v. Michigan*, 501 U.S. 957, 986-87 (1991) (opinion of Scalia, J.) (citing *Solem v. Helm*, 463 U.S. 277, 290-91 (1983)).

Petitioner was convicted of first-degree murder and was sentenced to sixty years in prison. *Dinwiddie*, 715 N.E.2d at 647. Illinois law provides that the term of imprisonment for first-degree murder is not less than twenty years and not more than sixty years. 730 Ill. Comp. Stat. 5/5-8-1(a)(1)(a) (2001). Petitioner's sentence falls within the statutory limit. Moreover, Petitioner has not presented any evidence that other defendants in this or any other jurisdiction have reduced sentences

for first-degree murder. Thus, the state court did not unreasonably apply a Supreme Court doctrine or did not rely on an unreasonable reading of the facts in light of the evidence presented. 28 U.S.C. § 2254(d).

Habeas corpus relief is not appropriate on Petitioner's claim of ineffective assistance of counsel. Claims of ineffective assistance of counsel are evaluated under the two-part test of *Strickland v. Washington*, 466 U.S. 668 (1984). Petitioner must show that his attorney's performance was unreasonably deficient and that this deficient performance prejudiced him such that there is a reasonable probability that the result of the proceeding would have been different. *Strickland*, 466 U.S. at 687, 688, 694. There is a strong presumption that counsel's performance was "within the wide range of reasonable professional assistance." *United States ex rel. Harrington v. O'Sullivan*, 923 F. Supp. 122, 125 (N.D. Ill. 1996) (quoting *United States v. Olsen*, 846 F.2d 1103, 1108 (7th Cir. 1988) (quoting *Strickland*, 466 U.S. at 689)).

Petitioner alleges four ways in which his counsel's performance was deficient: his attorney (1) told him that he had to testify at trial, (2) failed to contact a disinterested alibi witness, (3) failed to pursue an independent psychological analysis of Petitioner, and (4) should not have acted as sole counsel.

Petitioner argues that trial counsel was ineffective because he told Petitioner that he had to testify at trial and never told him that the jury could be instructed that it could not infer guilt from his decision not to testify. Petitioner also asserts that the record does not show that the trial court advised Petitioner of his right not to testify at trial. The trial court can cure any prejudice resulting from counsel's failure to advise defendant by instructing the jury that defendant need not testify at trial. *Granada v. United States*, 51 F.3d 82, 85 (7th Cir. 1995). Petitioner argues that since the trial

court did not so advise the jury, he was prejudiced by trial counsel's actions.

Failing to advise Petitioner that he need not testify at trial probably fell outside the range of reasonable professional conduct. "The freedom of a [criminal] defendant . . . to remain silent . . . is guaranteed by the Fifth Amendment and made applicable to state criminal proceedings through the Fourteenth." *Carter v. Kentucky*, 450 U.S. 288, 305 (1981). Advising Petitioner that he had a constitutional right not to testify at his trial would be reasonable professional conduct. However, to show prejudice under *Strickland*, Petitioner must show a reasonable probability that the outcome of the proceeding would have been different. Here, Petitioner cannot show that being advised of his right not to testify would have changed the outcome of the trial. The evidence, including that discussed above, tied Petitioner to the crime: his confession; eyewitnesses who placed him, a day after the shooting, in the car used in the shooting; and the bullets in the victim matched the weapon he confessed to using. Therefore, Petitioner's testimony does not present a reasonable probability of acquittal. Accordingly, he was not prejudiced by counsel's failure to advise him of his right not to testify. Thus, counsel's assistance was not ineffective on this basis.

Petitioner argues that trial counsel's failure to contact a disinterested alibi witness was ineffective assistance of counsel. Under *Strickland*, Petitioner cannot challenge his attorney's decision not to contact that witness if it was a strategic choice made after an investigation of the law and facts "relevant to plausible options." 466 U.S. at 690. "[C]ounsel has a duty to make reasonable investigations to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 690-91.

Petitioner argues that his case is analogous to *Montgomery v. Petersen*, 846 F.2d 407 (7th Cir. 1988). In *Montgomery*, Montgomery was charged with the commission of two residential

-12-

burglaries. 846 F.2d at 408. He was convicted of one of the residential burglaries based on the testimony of an accomplice and acquitted of the other based on the testimony of a disinterested witness who placed him in another city on the day of the burglaries. *Montgomery*, 846 F.2d at 408. However, Petitioner's case is distinguishable from *Montgomery* because that case involved "a swearing match between a prosecution witness, who admitted committing the crime, and [the petitioner], who denied any part in it." *Montgomery*, 846 F.2d at 413 (quoting *Nealy v. Cabana*, 764 F.2d 1173, 1174 (5th Cir. 1985)). In *Montgomery*, the other alibi witnesses were the defendant's family members, who could be considered biased. 846 F.2d at 414. Therefore, the testimony of a disinterested alibi witness was crucial in determining credibility. *Montgomery*, 846 F.2d at 414.

Here, it is uncertain what the testimony of the disinterested alibi witness would have proved. Petitioner has not identified what would have been the substance of the witness's testimony. Furthermore, even if the witness's testimony placed Petitioner at a place other than the place of the shooting, he cannot show that he was prejudiced by the lack of this testimony because there was ample evidence placing him at the scene of the crime: he confessed to the crime three times, he was seen driving around in a car used in the shooting, and the bullets found in the victim matched the gun he confessed to using. Therefore, the failure of trial counsel to contact a disinterested alibi witness can not be said to be ineffective assistance of counsel.

Petitioner also argues that trial counsel's failure to pursue an independent psychological evaluation of Petitioner was ineffective assistance. Petitioner bases this claim on the fact that, during the trial, counsel asked a witness, "Did you inquire of Gordon Dinwiddie whether he had any learning problems, learning disabilities?" (Pet'r Br. Supp. Pet. Writ Habeas Corpus at 6.) As was stated earlier, the standard under *Strickland* is that counsel must make a reasonable investigation

such that he can make a reasonable decision that further investigation is unnecessary. Petitioner has not presented any evidence, other than the question quoted earlier, that would suggest that counsel's decision was not professionally reasonable. Petitioner has not presented any evidence that shows that an independent psychological evaluation was clearly necessary or that counsel should have been on notice of Petitioner's psychological problems. In fact, Petitioner has not identified any such learning disability or psychological problem. Thus, Petitioner has not satisfied the performance prong of *Strickland*. Nor can Petitioner show that he was prejudiced, as was discussed earlier.

Finally, Petitioner cites Illinois Supreme Court Rule 416 to support his contention that his attorney, George Nichols, should not have acted as sole counsel. This rule pertains to counsel for defendants in capital cases. This is not a capital case. Thus, Illinois Supreme Court Rule 416 does not apply. Furthermore, Petitioner has not identified how additional counsel would have aided his defense or why Nichols was not competent to try the case alone. Moreover, Petitioner has not shown that he was prejudiced by having Nichols as sole counsel.

As has been noted earlier, the case against Petitioner was strong: Petitioner confessed to the crime three separate times, physical evidence corroborated his confession, witnesses observed him driving around in the car used in the shooting, etc. Thus, Petitioner cannot show he was prejudiced by Nichols acting as sole counsel. Therefore, Petitioner cannot show that trial counsel was ineffective because he acted as sole counsel.

Petitioner's remaining claim, that he was denied due process and equal protection where the trial court determined that his statement was voluntary and admissible, is properly before this Court. Habeas corpus relief is not appropriate on this claim because the state court did not apply a United States Supreme Court doctrine unreasonably to the facts of the case and the state court's decision

did not rely on an unreasonable reading of the facts in light of the evidence presented. 28 U.S.C. § 2254(d).

"A confession is voluntary if, in the totality of the circumstances, it is the 'product of a rational intellect and free will and not the result of physical abuse, psychological intimidation, or deceptive interrogation tactics that have overcome the defendant's free will.'" *United States v. Huerta*, 239 F.3d 865, 871 (7th Cir. 2001) (quoting *United States v. Dillon*, 150 F.3d 754, 757 (7th Cir. 1998)). Petitioner must show coercive police activity in order for the Court to find that his confession was not voluntary within the meaning of the Due Process Clause of the Fourteenth Amendment. *Huerta*, 239 F.3d at 871 (quoting *Colorado v. Connelly*, 479 U.S. 157, 167 (1986)).

Coercion is analyzed "from the perspective of a reasonable person in the position of the suspect." *Huerta*, 239 F.3d at 871 (citing *United States v. Brooks*, 125 F.3d 484, 492 (7th Cir. 1997)). The following factors are to be considered when determining whether there was coercive police activity: (1) Petitioner's age, education, intelligence level and mental state; (2) the length of detention; (3) the nature of the interrogation; (4) the inclusion of advice about constitutional rights; (5) the use of physical punishment, i.e., the deprivation of food or sleep; and (6) whether Petitioner has ingested narcotics or alcohol or was fatigued. *Huerta*, 239 F.3d at 871 (citing *Brooks*, 125 F.3d at 492). A court should defer to the trial court's determination of credibility unless the testimony is "exceedingly improbable." *Huerta*, 239 F.3d at 872 (citing *Dillon*, 150 F.3d at 758).

Petitioner was sixteen at the time that he was interrogated. Petitioner has not submitted any facts showing that he was of low intelligence or not of an average mental state. By age sixteen, Petitioner had previous experiences with the police and the legal system when he was charged with attempted murder, which was subsequently dismissed, and an auto theft. *Dinwiddie*, 715 N.E.2d at

645. These earlier contacts with the criminal justice system reasonably support the conclusion that Petitioner knowingly and voluntarily waived his rights and spoke with police in this case. *Dinwiddie*, 715 N.E.2d at 645.

Petitioner's first confession was given in the basement of his home after fifteen to twenty minutes of interrogation by the police. *Dinwiddie*, 715 N.E.2d at 644. Moreover, Petitioner confessed on three separate occasions. *Dinwiddie*, 715 N.E.2d at 644. At the hearing to suppress Petitioner's confession, Petitioner's stepfather, who was present in the home while Petitioner was interrogated, testified that he heard no screams or banging or voices from the basement. *Dinwiddie*, 715 N.E.2d at 644. Furthermore, in his statement, Petitioner indicated that the police had treated him well. *Dinwiddie*, 715 N.E.2d at 645. Petitioner was "not sleep deprived, unfed, left alone in a room for hours on end or otherwise mistreated." *Dinwiddie*, 715 N.E.2d at 645. Thus, there was no evidence of physical abuse of Petitioner by police officers or that the interrogation was in any way coercive.

Finally, it is clear that Petitioner was properly advised of his constitutional rights. *Dinwiddie*, 715 N.E.2d at 642, 643. Therefore, there is no evidence to suggest that the state court applied a United States Supreme Court doctrine unreasonably to the facts of the case or relied on an unreasonable reading of the facts in light of the evidence presented.

## CONCLUSION

For the reasons stated herein, Gordon Dinwiddie's Petition for Writ of Habeas Corpus is denied.

**IT IS SO ORDERED.**

John W. Darrah, Judge
United States District Court

Date: December 12, 2001